Timothy Southard and Mary E. his wife, late Mary E. Ludlow, Getty M. Ludlow, Phebe Ann Ludlow, and Daniel B. Ludlow, infants, &c. v. The Morris Canal and Banking Co., Alexander Henderson, Jun., Isaac Perry, and Freeman Woods.

There can be no doubt of the power of this court to stay the commission of waste by injunction; it is constantly exercised, and is necessary to the administration of justice.

Even in cases of trespass, courts of equity have repeatedly held, that when the damage was great and irreparable, or by constant repetition calculated to do lasting injury to the inheritance; they would interfere to prevent the evil.

But where the trespass complained of was committed more than a year before the bill was filed, and there is no allegation that the defendants are preparing, or have threatened, to commit similar depredations; there is nothing to authorize an injunction.

The Morris Canal and Banking company, in erecting the dam to raise the waters in Lake Hopatcong, have not exceeded their chartered powers, or used them unnecessarily; it being notorious, that without the waters of Lake Hopatcong their canal would be worthless.

The protracted delay of the complainants, for several years after the dam has been erected, is decidedly unfavorable to the motion for injunction. The application should be prompt.

After the water has been raised to a certain height for several years, and the complainants have submitted to it, they cannot now, because the water has been temporarily drawn off, take advantage of that circumstance to revive the right, and place themselves in the situation in which they would have stood if application had been made years ago.

The sum assessed by the appraisers (as the value of lands and damages) can be no compensation for lands not described in the survey by which the appraisement was made.

Whether upon notice given to the widow in possession, a sum of money assessed to her, without noticing the infant heirs, is intended for the damage to her dower right, or as full compensation for all the injury done to the property, *query?*

DANIEL B. Ludlow, late of the county of Morris, died in 1823, intestate, leaving a widow and four infant children. The real estate of which he died seized, consisted of about one hundred acres of land, situate on the margin of the Hopatcong lake. His widow afterwards intermarried with Timothy Southard, who, with the wife and the infant children, are the complainants in this cause. The bill is filed for an injunction and account. It sets out, that the said real estate was formerly valuable, consisting chiefly of valuable meadow land, and having on it a convenient dwelling-house and a tan-yard. That in November, 1826, the defendants, by virtue of their act of incorporation, proceeded to raise the waters in the lake, by damming up the outlet, in consequence of which the land and property were greatly injured; the dwelling-house was rendered untenantable, and the well filled with pond water. That the overflowing has been continued without consent, from that time to the present, with the exception of a few intervals, when the company have let off the water; and that the company declare their intention

of keeping up the dam, for the purposes of the canal; in consequence of which the complainants must be for ever deprived of their land without any compensation.

The bill then states, that in January, 1831, three of the agents of the company, who are made defendants, cut down and carried away a quantity of wood and timber on the said tract, for the purpose of making a communication between the Hopatcong lake and Woods lake; which cutting was not necessary for the purposes of the canal, nor warranted by the charter. The value of the wood is estimated at fifteen dollars.

The bill then charges, that on the 1st of July, 1831, Mrs. Southard received a notice that the appraisers, appointed under the act of incorporation, to assess the damages sustained by landholders, would meet at Dover to make the assessment; and that no notice was given to the infant complainants. That Southard and his wife appeared, and by counsel protested against any proceeding to preclude them from resorting to the law of the land for redress. That the commissioners refused to make appraisement for damage to any land or property not contained in the survey or map submitted to them by the company, although it was admitted by the agent of the company that a part only of the lands overflowed were embraced in the survey. That in July, 1831, the said appraisers awarded to Mary E. Southard, (late Ludlow,) the sum of five hundred and ten dollars and twenty cents, for the damages she had sustained by the overflow of the lands included in the survey; but no damages were appraised to the infants for the injury to their property or interest in the land. That the sum awarded is a moderate compensation for the destruction of her interest, and that she is not bound by the award; but considering the known insolvency of the company, she offers, to avoid litigation, to accept of the award; and she has repeatedly offered to do so, but the company have constantly refused.

The bill further states, that they have frequently requested the company to make compensation to the infants for the damage done by overflowing their lands, and also that they have requested compensation for damages done to that part of the property not included in the survey, and that the company refuse to com-

ply with their reasonable requests. That in November last the company saw fit to draw off the water from the surface of the pond or lake, whereby the lands of the complainants are left nearly dry, and they hoped the company would desist from again overflowing them, until they should make some reasonable compensation for the injury committed: but, on the contrary, they have lately shut their waste gates, and the waters are rapidly rising, and must soon overflow the property and render it valueless.

The prayer of the bill is, among other things, that the defendants may be enjoined from cutting and removing any more wood or timber from the lands of the complainants, and from raising the water in the lake above its natural height.

Upon notice given, affidavits were taken, and the motion for injunction argued before the court, by

*W. Halsted,* for the complainants;

*I. H. Williamson,* for defendants.

Cases cited:—*Eden on Inj.* 104, 115, 138, 140, 164, 165, 269; 1 *John. C.* 11; 2 *John. C.* 162, 272, 463; 3 *John. C.* 282; 6 *Ves. jr.* 137; 10 *Ves.* 192; 2 *Dow.* 536; *Coop. Eq. R.* 77.

THE CHANCELLOR. Can the injunction, as prayed for, be granted on either ground?

*First,* As to the alleged waste.

There can be no doubt of the power of this court to stay the commission of waste by injunction. It is constantly exercised, and is necessary to the proper administration of justice. Even cases of trespass have, of late years, been favorably entertained, and the courts of equity have repeatedly held, that where the damage was great and irreparable, or by constant repetition calculated to do a lasting injury to the inheritance, they would interfere to prevent the evil: *Flamang's case,* 7 *Ves.* 308; *Eden on Inj.* 138; *Stevens* v. *Beekman,* 1 *John. C. R.* 318. In this last case, chancellor Kent held, that an injunction might be

66

Jan. 1832.

Southard
et ux.
v.
The Morris
Canal.

granted, under very special circumstances, in a case of trespass; but that it would not be allowed merely to prevent the repetition of a trespass, where the party had an adequate remedy at law.

The complainants' bill presents, as I conceive, no matter for an injunction on the ground of waste. The injury complained of was committed more than a year before the bill was filed. The wood and timber have been removed from the premises. There is no allegation that the defendants are preparing to commit similar depredations, or that they have threatened to do it. There is, then, nothing to authorise an injunction. It cannot make reparation for past injuries; its province is to restrain those that are in contemplation or in progress. The object is strictly preventive.

The bill seeks compensation for the injuries charged, and that an account may be taken. Admitting this to be a proper tribunal for obtaining such redress, the allowance of an injunction can give no aid to the complainants or the court.

*Secondly,* Ought the injunction to issue to prevent the company from letting down the flood-gates, and raising the water above its natural height in the pond?

It appears by the eleventh section of their act of incorporation, that the company are expressly authorised to raise the waters in the Green Pond, and Lake Hopatcong, commonly called the Great Pond, by damming the same, and to use the surplus water thus obtained; all loss and damage to the owners of said ponds and the lands flowed or otherwise used in obtaining water for the canal, being paid for agreeably to the previous provisions of the act. The company, in erecting their dam, have not exceeded their chartered powers; nor have they used them unnecessarily, for it is a matter of general notoriety, that without the waters of Lake Hopatcong, their canal would be worthless. The dam is represented to have been built, and the overflowing to have taken place, as early as November, 1826, upwards of five years ago. It is charged that the dwelling-house has been rendered almost uninhabitable, the meadows spoiled, and the garden and tan-yard greatly injured. And yet this is the first time an application has been made for an injunction. This protracted delay is decidedly unfavorable to the present motion.

The object of the injunction, as already stated, is preventive, and the application should be prompt. It is very unusual for a party who has stood still, and seen his adversary erect a nuisance at great expense, and then permitted it to continue for a number of years without complaint, to come into this court for an order to prevent its continuance. To avoid this difficulty, the complainants set up, that the waters have been for some time permitted to escape, so that the lake is now restored to its natural level; and that the company are now about to raise the water to its former height. They insist, that this is a renewal of the nuisance, or an attempt to renew it, which ought to be prevented. It is to be remarked, however, that the defendants are about to do nothing more than they have formerly done. There is no charge that they are about to raise the water higher than formerly, or than it was when the map and valuation were made. The object of the dam was to raise the water in the lake to a certain height. It has been so raised for several years, and the complainants have submitted to it. They cannot now, because the water has been temporarily drawn off, take advantage of that circumstance, so as to place themselves in the situation in which they would have stood, if they had made this application five years ago. It is not sufficient to revive the right which might then have existed.

The complainants insist, however, that the lands of the infant heirs have not been appraised, or paid for in any way; that the sum awarded to Mrs. Ludlow has not been paid to her, and that the defendants should be restrained from raising the water until full compensation is made. The case shows, that appraisers were appointed under the act, and that a valuation took place. The whole damage sustained by this property was assessed by the appraisers, as the defendants contend, at five hundred and ten dollars and twenty cents. The complainants, Southard and wife, insist that this was the damage assessed to the dower interest of Mrs. Southard, and that they refuse to pay it to her. In the return of the appraisers, a copy of which has been exhibited, it appears there is an assessment made to Mrs. Ludlow of five hundred and ten dollars and twenty cents, as above stated: and the quantity of land occupied by the compa-

Jan. 1832.

Southard
et ux.
v.
The Morris
Canal.

ny, and for which an allowance is made, is twenty-eight acres and four hundredths, or not quite one third of the farm. If the appraisers intended this as a compensation for the injury done to the whole property, the injunction ought not to issue, because the company have offered to pay the money to the persons entitled, and they have offered to pay it into court. It is not proper for me, at this time, to express any definite opinion as to the intention of the appraisers, or the proper way in which the money should be distributed. The complainants may not choose to accept the sum awarded, and may take the legal remedy. I may say, however, that there is at least a probability, that the sum appraised was intended as a full compensation for all the injury sustained by the property, it then being in the possession of Mrs. Ludlow, in whose favor the award was made. While this probability remains, and the question is unsettled, I cannot consent that an injunction should go on the ground that no compensation has been made or offered.

There was another point raised by the complainants at the hearing, viz: that the defendants overflowed more land than had been described on the map or appraised by the commissioners. This presents a different question from any yet considered. The sum assessed by the appraisers can be no compensation for lands not described in the survey by which the appraisement was made. In view of this, it is proposed to give sufficient security for the amount of damages the complainants might be justly entitled to on that ground. I think this would be right, provided the complainants will signify their willingness to abide the decision of the court, in regard to the distribution of the money awarded by the commissioners. From what passed at the argument, I presume there will be no difficulty on this part of the case.

The injunction is refused, with costs.